IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEANNE S. KELLY, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. GLR-23-127 |
| ACTS RETIREMENT-LIFE COMMUNITIES, INC., | * |
| | * |
| Defendant. | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant ACTS Retirement-Life Communities, Inc.'s ("ACTS") Motion to Dismiss (ECF No. 6). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion in part and deny the Motion in part.

## I.   BACKGROUND[1]

Plaintiff Jeanne S. Kelly ("Kelly") worked for Defendant ACTS, which owns and operates independent living communities for the elderly, as a registered nurse from 2009 until she was terminated on November 30, 2021. (Compl. ¶¶ 2–5, ECF No. 2). At some point in the past, Kelly experienced a severe allergic reaction that resulted in life-threatening anaphylaxis after receiving a vaccine for H1N1. (Id. ¶ 11). During the COVID-19 pandemic, Kelly grew concerned that the COVID-19 vaccine might cause her to have

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 2) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

another severe reaction. (Id.). She consulted her doctor, Russell Schilling, D.O., and he advised Kelly that "she could not safely receive any" COVID-19 vaccines. (Id.). Schilling wrote a note stating that Kelly had a "severe immunization reaction in the past, most notably anaphylaxis to H1N1 vaccine," and "she therefore has contraindication to COVID vaccine administration and should not be vaccinated." (Id.; Aug. 13, 2021 Med. Note at 1, ECF No. 2-1). Kelly explains that "[a]naphylaxis causes the immune system to release a flood of chemicals that can cause the afflicted to go into shock, with a sudden drop in blood pressure and narrowing of the airways, blocking breathing." (Compl. ¶ 12). She indicates further that "[a]naphylaxis can result in death," and claims that her allergy to vaccines constitutes a "disability." (Id. ¶¶ 12, 14).

On October 7, 2021, ACTS sent a letter to Kelly about the risks COVID-19 posed to ACTS residents and staff. (Oct. 7, 2021 Letter at 1, ECF No. 2-2). The letter stated that "having unvaccinated staff . . . present[ed] a real danger to the welfare and safety of the residents." (Id.). Accordingly, ACTS indicated that "allowing [Kelly] to continue to work unvaccinated" in their retirement communities "place[d] an undue burden on the organization" and therefore, ACTS could no longer make an accommodation. (Id.). The letter further provided that should Kelly decide to remain unvaccinated, she would become "ineligible to be scheduled for work" in their facilities "or in any direct resident care beginning on November 1, 2021." (Id.). ACTS stated that Kelly could alternatively "apply for any vacant positions on the independent living side of the campus, including roles in culinary services, housekeeping, maintenance and security." (Id.).

On November 12, 2021, ACTS sent Kelly another letter. (Nov. 12, 2021 Letter at 1, ECF No. 2-3). ACTS noted that the Center for Medicare & Medicaid Services had recently "published rules for compliance with the federal mandate that all health care workers be vaccinated for COVID-19." (Id.). Specifically, the rules "assure[d] that persons working in the health care sector must be vaccinated," with limited, unspecified exceptions. (Id.). Thus, Kelly's "ability to work anywhere in the health care sector [would] require vaccination." (Id.). ACTS indicated that it hoped that Kelly would choose to get vaccinated, and that if she did, she would be able to return to clinical work. (Id.). However, ACTS made clear that Kelly's decision not to get vaccinated would result in termination. (Id.).

Kelly avers that "the true indication of whether an employee was carrying COVID-19 was through testing, not simply whether they had been vaccinated." (Compl. ¶ 18). She alleges that ACTS "relied solely upon vaccination status to determine whether an employee was a danger to its residents or other employees." (Id. ¶ 19). Kelly claims that ACTS "ignored that vaccination status was not indicative of whether someone was a 'real danger' but rather testing was the indicator." (Id.). In October 2021, Kelly proposed that in lieu of taking the vaccine, she could double mask, wear a face shield, and submit to regular testing. (Id. ¶ 21). Nonetheless, she claims that ACTS "failed to provide [her] any reasonable accommodations to . . . allow her to continue to work as a registered nurse" in its retirement communities. (Id. ¶ 22). Kelly alleges that her "disability was a motivating factor in her termination as [ACTS] was aware of her disability" after she provided the August 13, 2021 medical note and a COVID-19 Vaccination Declination form the same day. (Id. ¶ 27; Vaccination Declination Form at 1, ECF No. 2-4).

On December 12, 2022, Kelly filed suit in the Circuit Court for Talbot County, Maryland. (Compl. at 1). In her Complaint, Kelly alleges: disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111−12117 (Count I); failure to accommodate under 42 U.S.C. § 12112(b)(5)(A) (Count II); denial of employment based on need to make a reasonable accommodation under 42 U.S.C. § 12112(b)(5)(B) (Count III); discrimination through qualification standards under 42 U.S.C. § 12112(b)(6) (Count IV); and wrongful termination (Count V). (See id. ¶¶ 30–66).

On January 18, 2023, ACTS removed the case to this Court on the basis of federal question jurisdiction as to the ADA claims and supplemental jurisdiction as to the state law wrongful termination claim. (See Notice Removal ¶¶ 4, 5, ECF No. 1). On January 26, 2023, ACTS filed a Motion to Dismiss. (ECF No. 6). Kelly filed an Opposition on February 9, 2023 (ECF No. 8), and ACTS filed a Reply on February 22, 2023 (ECF No. 9).

## II.   DISCUSSION

### A.   Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.   Analysis**

    **1.   ADA Claims**

Kelly raises several claims that ACTS discriminated against her in violation of the ADA (Counts I–V). (See Compl. ¶¶ 30–66). "To establish a prima facie case for disability discrimination under the ADA," the plaintiff must demonstrate: "(1) that she has a disability, (2) that she is a 'qualified individual' for employment in question, and (3) that her employer discharged her or took other adverse employment action because of her

disability." Lacasse v. Didlake, Inc., 712 F.App'x 231, 238–39 (4th Cir. 2018). A disability is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." Parker v. Children's Nat'l Med. Ctr., Inc., No. ELH-20-3523, 2021 WL 5840949, at *14 (D.Md. Dec. 9, 2021) (quoting 42 U.S.C. § 12102(1)).

Major life activities include, but not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include "the operation of a major bodily function, including but not limited to . . . respiratory . . . functions." Id. § 12102(2)(B). A major life activity is "substantially limit[ed]" if the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Determining whether an activity is substantially limited "usually will not require scientific, medical, or statistical analysis." Id. § 1630.2(j)(1)(v). Finally, the ADA provides that "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

"An individual with 'a record of such an impairment,' or who is 'regarded as having such an impairment,' is considered to have a disability." Parker, 2021 WL 5840949, at *14

(quoting 42 U.S.C. § 12102(1)(B)–(C)). A "record of disability" means the individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." Id. (quoting Foore v. Richmond, 6 F.App'x 148, 153 (4th Cir. 2001)). Whether an individual has "a record of such an impairment; or . . . [is] regarded as having such an impairment" is "a question of law for the court." Id. (quoting Coghill v. Bd. of Educ. of Prince George's Cnty., No. GJH-14-2767, 2017 WL 1049470, at *5 (D.Md. Mar. 17, 2017)). The Court must make "an individualized inquiry, particular to the facts of each case." Id. (quoting EEOC v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001)).

Here, ACTS contests whether Kelly suffers from a disability under the ADA. (Mem. Law Supp. Def.'s Mot. Dismiss ["Mot."] at 3, ECF No. 6-1). Specifically, ACTS argues that Kelly failed to identify a major life activity that her allergies substantially limit. (Mot. at 6; Def.'s Reply Supp. Mot. Dismiss ["Reply"] at 2–5, ECF No. 9 (arguing that Kelly did not identify difficulty breathing as a result of her allergies until she filed her Opposition). The Court disagrees.

Although the language in the Complaint varies at times, the Court finds that Kelly alleges in her Complaint that she has a medical history of "severe allergies and asthma" upon receiving vaccinations that previously caused her near-fatal anaphylaxis. (See Compl. ¶ 11). Kelly consulted with a physician who provided in writing that she has a "severe immunization reaction" and "she therefore has contraindication to [the] COVID-19 vaccine." (Id.; see Aug. 13, 2021 Med. Note at 1). Further, she explains that her allergies are connected to her capacity to breathe, noting that anaphylaxis causes "a sudden drop in

7

blood pressure and the narrowing of the airways, blocking breathing" and potentially "result[ing] in death." (Compl. ¶ 12). Breathing is a major life activity under the ADA. 42 U.S.C. § 12102(2)(A). The Court, therefore, finds that Kelly's factual support of her purported disability is sufficient at this stage in the case.

ACTS cites Eubanks v. Mercy Medical Center, Inc., No. WDQ-15-513, 2015 WL 9255326, (D.Md. Dec. 17, 2015), in support of its assertion that Kelly has failed to establish that she is disabled under the ADA. (See Mot. at 5, 7). Eubanks is inapposite. There, the Court rejected the plaintiff's claim that she should be exempt from receiving a vaccine because she had allergic rhinitis. Eubanks, 2015 WL 9255326, at *1, *4–6. The case is easily distinguishable, however, as the complaint there "contain[ed] no information about how Eubanks's allergies substantially limited a major life activity." Id. at *6. Indeed, the Court found that the plaintiff never specifically alleged that she had actually experienced any symptoms related to her alleged allergies. Id. The Court explained that this was insufficient to state a claim under the ADA but recognized that if the plaintiff could offer facts "showing that her allergies in fact limited a major life activity, she [would have] stated a disability under the ADA." Id. The Court further permitted the plaintiff to amend her complaint to provide such details. Here, Kelly specifically alleges that she went into anaphylactic shock that nearly killed her after receiving a prior vaccination due to her severe allergies. (See Compl. ¶ 11). Although Kelly may need to develop further facts that connect the vaccines for purposes of summary judgment, she has sufficiently identified her severe allergies and previous reaction as a disability for this stage in the case.

ACTS raises no alternative arguments attacking Kelly's ADA claims. As such, the Court will deny ACTS' Motion as to Counts I–IV.

### 2. Wrongful Termination

Next, ACTS contends that the Court should dismiss Kelly's claim for wrongful termination as Maryland does not recognize a common law cause of action for wrongful termination where there is an available statutory remedy. (Mot. at 7). In her Opposition, Kelly ignores ACTS' arguments as to the claim. (See generally Pl.'s Opp'n Def.'s Mot. Dismiss ["Opp'n"], ECF No. 8). As such, Kelly has conceded her state law claim. See McRae v. Westcor Land Title Ins., No. RWT-16-2332, 2017 WL 1239682, at *3 (D.Md. Mar. 17, 2017) (stating that by failing to respond to argument in a dispositive motion, a plaintiff concedes her claim). Finally, even if Kelly had responded to ACTS' argument, her wrongful termination claim would be subject to dismissal as she has a statutory remedy for her discharge under the ADA. See Davis v. Balt. Hebrew Congregation, 985 F.Supp.2d 701, 718 (D.Md. 2013) ("Under Maryland law, no state law tort claim for wrongful discharge can lie if a statute provides a remedy."). Accordingly, the Court will dismiss Count V.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant ACTS' Motion to Dismiss (ECF No. 6) as to Kelly's wrongful termination claim (Count V). The Court will deny ACTS' Motion

9

as to the ADA claims (Counts I–IV). A separate Order follows.

Entered this 5th day of September, 2023.

                                                                         /s/
                                        George L. Russell, III
                                        United States District Judge